Christopher J. Seelinger
Paul S. Grossman
**WEINER LAW GROUP LLP**
*Attorneys for Plaintiffs*
629 Parsippany Road
Parsippany, NJ 07054
cseelinger@weiner.law
(973) 403-1100

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| THE ONLI CORPORATION, DHRYL ANTON, and MICHAELA KATHRENS ANTON, <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS GRIFFIN, <br><br> Defendant. | Civil Action No. _____ <br><br><br> **VERIFIED COMPLAINT** |

Plaintiffs the Onli Corporation ("Onli"), Dhryl "Doc" Anton ("Dhryl"), and Michaela Kathrens Anton ("Michaela") (collectively, "Plaintiffs"), by and through their attorneys, Weiner Law Group LLP, for their Verified Complaint against Defendant Thomas Griffin ("Griffin" or "Defendant"), allege as follows:

**NATURE OF THE ACTION**

1.      This action arises from an ongoing campaign of impersonation, trademark infringement, defamation, doxing, attempted computer intrusion, and extortion that Defendant Griffin has waged against Plaintiffs—a financial-technology company and two of its executives— and seeks emergency injunctive relief to bring that campaign to an end.

2.      Griffin is a former technology consultant who sought employment with Onli and was rejected. Upon information and belief, Griffin had previously been terminated from other positions for posting repugnant videos online. He has recently described his personality as

1

"crazy" and "vindictive." After Onli declined to hire him, Griffin set out on a vile campaign of revenge against the company through the extortion and harassment of its executives.

3.  Griffin has impersonated Onli and its executives on major platforms, including YouTube and LinkedIn, using Onli's federally registered trademark, marketing materials, and the names, likenesses, and personally identifiable information of its executives. Most of the fake accounts and channels can be found in a list **created by Griffin**, a true and correct of which is attached as **Exhibit G.** His counterfeit accounts and web pages are designed to appear authentic, but are used to publish defamatory statements about Onli, to disclose sensitive private information about its executives, and to circulate racist, artificial-intelligence-generated depictions of Dhryl and his family.

4.  Griffin's own communications supply the motive. In emails to Plaintiffs, Griffin has claimed credit for the campaign and repeatedly demanded payment in exchange for ending it. Each time Onli has succeeded in having an impersonating account removed, Griffin has rebuilt it—creating new accounts and new content within a day or two of every takedown.

5.  Griffin's conduct has escalated beyond impersonation to include the disclosure of the individual Plaintiffs' home address and financial-account information, apparent drone surveillance of their home, the registration of internet domains incorporating Plaintiffs' marks and names, and an attempt to harvest sensitive credentials from Onli's software-development systems—all accompanied by demands for payment. Plaintiffs bring this action to restrain that unlawful conduct and to recover for the harm it has caused.

## THE PARTIES

6.   Plaintiff The Onli Corporation is a Delaware corporation with its principal place of business in Henderson, Nevada. Onli develops and markets a platform for the creation, storage, and transfer of digital assets.

7.   Plaintiff Dhryl Anton is Onli's founder and Chief Executive Officer. He resides in Scottsdale, Arizona.

8.   Plaintiff Michaela Kathrens Anton is Onli's Chief Operating Officer. She is married to Dhryl, resides with him in Scottsdale, Arizona, manages Onli's response to the conduct described in this Complaint, and is Plaintiffs' principal contact for this matter.

9.   Non-party Ian McFall is Onli's Chief Technology Officer. Although Mr. McFall is not a plaintiff, Griffin has targeted him as part of the scheme described below.

10.   Defendant Thomas Patrick Griffin is an individual residing at 76 Oakwood Village, Apartment 6, in Flanders, New Jersey. In 2022, Griffin presented himself to Onli as a technology consultant and received temporary developer access to Onli's systems and materials before that relationship ended.

## JURISDICTION AND VENUE

11.   This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1121 because this action arises under the laws of the United States, including the Lanham Act, 15 U.S.C. § 1051 et seq. (including the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and 15 U.S.C. § 8131), and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

12. This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

13. This Court has personal jurisdiction over Griffin because, upon information and belief, he resides in New Jersey, and because he has directed the tortious and unlawful conduct described in this Complaint at Plaintiffs and at persons and businesses with whom Plaintiffs deal.

14. Venue is proper in this District under 28 U.S.C. § 1391(b) because Griffin resides in this District and because a substantial part of the events giving rise to Plaintiffs' claims occurred here.

## FACTUAL ALLEGATIONS

### A.  Onli's Intellectual Property and Online Presence

15. Onli owns United States Trademark Registration No. 5,932,330 for the standard-character word mark **Onli**, registered on the Principal Register on December 10, 2019, in International Class 9 for computer software and platform services relating to the creation, storage, and transfer of digital tokens and virtual currencies. A true and correct copy of that Onli trademark registration information is attached as **Exhibit A**.

16. Onli's protectable intellectual property also includes its promotional and other videos, its logo, branded imagery, and the text of its website and marketing materials. Onli's authentic online presence includes the domains onli.one, onli.ai, onli.cloud, and onli.you, and the contact address hello@theonlicorporation.com.

17. Onli also maintains portions of the source code for its services in repositories hosted on GitHub, a platform for hosting, editing, collaborating on, and updating computer-code

projects, under the organization account "OnliSyn." Onli's GitHub repositories and related internal systems are used in and affect interstate commerce, including to promote and raise awareness of Onli's services to customers and investors throughout the United States.

**B.  Griffin's Racist Harassment Campaign Begins via Text Message and YouTube**

18.    In mid-May 2026, Griffin began sending disparaging, racist text messages—including degrading, artificial-intelligence-generated depictions of Dhryl—to Onli executives and members of their families. True and correct copies of representative messages are attached as **Exhibit B**.

19.    In late May 2026, a YouTube channel calling itself "The Onli Corporation Video Vault," using the handle @onlicorporation and holding itself out as Onli's official YouTube channel, began uploading dozens of videos.

20.    The channel used the Onli mark and Onli's full company name in its title and handle, reproduced Onli's tagline and marketing copy, and linked to Onli's genuine websites— onli.one, onli.ai, onli.cloud, and onli.you—to reinforce the impression that it was the real company. The channel further spoofed Onli's authentic contact address (hello@theonlicorporation.com) with a near-identical knockoff (hello@onlicorporation.com).

21.    Having presented itself as Onli's authentic channel, the channel was then filled with dozens of videos bearing offensive titles and disparaging content created to attack Onli's reputation, including racist depictions of the Anton family. The channel also published sensitive private information, including an Onli bank-account number, in its video descriptions. True and correct captures of the counterfeit channel, its content, and its descriptions are attached as **Exhibit C**.

22. The damage was immediate. Scott Ferguson, the managing member of Lucra Financial LLC, one of Onli's business partners, was the first to notice the counterfeit channel, which made false and disparaging statements concerning the Onli–Lucra relationship and displayed a video that was not intended to be publicly available. Lucra was confused by the counterfeit channel and contacted Onli with serious concerns, and Griffin's conduct threatened a new agreement that Onli is negotiating with Lucra. The Declaration of Scott Ferguson is attached as **Exhibit D**.

23. Beginning on May 29, 2026, Onli filed a series of reports with YouTube requesting removal of the counterfeit channel for trademark and other violations of law. YouTube removed the channel early on Saturday, June 13, 2026. The relief was short-lived.

### C.  Griffin Expands His Impersonation to LinkedIn and Other Platforms

24. Within hours of the channel's removal, Griffin emailed Onli, acknowledged the removal, and taunted Onli with links to new pages impersonating and harassing Plaintiffs with racist and profane artificial-intelligence-generated depictions of Dhryl and his family. A true and correct copy is attached as **Exhibit E.**  That email, along with dozens of others, was sent from Tom Griffin through his personal email address "tom@thegrif.net."

25. On LinkedIn, a counterfeit company page (linkedin.com/company/onli-corporation) posed as Onli's official presence. It used Onli's name, website, industry, and company size, but displayed fabricated logos and a Scottsdale street address that was, in fact, the Antons' home address. A profile impersonating Onli's CEO also appeared (linkedin.com/in/dhryl-anton), claiming to be "Dhryl Anton—Founder & CEO at Onli."  Griffin used these accounts to send connection requests—including to Onli's own employees—and to publish fabricated news posts intended to damage Onli's reputation. True and correct captures of

these counterfeit LinkedIn pages are attached as **Exhibit K**.  True and correct images of Griffin's Youtube content impersonating and defaming Dhryl are attached as **Exhibit L**.

26. Shortly before the filing of this Complaint, one of Onli's largest clients noticed videos posted by the counterfeit "Dhryl Anton" account and contacted Onli with concerns about their content.

27. Griffin has also created fake "Dhryl Anton" accounts on pornographic and other websites, to suggest that Dhryl produces or purchases pornography online and to extend the impersonation campaign across platforms. Griffin has referenced those accounts in connection with his extortion demands. Griffin's list of his fake accounts and channels, made in connection with his attempted extortion, is attached as **Exhibit G.**  Dhryl holds deep spiritual beliefs that make the falsified connection to such adult-content accounts extremely distressing to him.

## D.  Griffin's Doxing and Surveillance of the Anton Family

28. Griffin's campaign has included the deliberate publication of the individual Plaintiffs' private information and the surveillance of their home. He published the Anton family's home address on the counterfeit LinkedIn page, posted an Onli bank-account number in YouTube video descriptions, and sent Plaintiffs apparent drone-surveillance footage of their home by text message. A true and correct image (with GPS coordinates redacted) from the drone footage transmitted to Plaintiffs is attached as **Exhibit H**.

## E.  Griffin's Cybersquatting

29. Griffin registered a series of internet domains incorporating the names of Onli and its executives, including onlitoken.com, dhrylanton.org, ianmcfall.org, and

katherineanton.com.  He registered those domains solely for the purpose of using them as part of his harassment and extortion campaign in an attempt to get Plaintiffs to buy them.

30.    Griffin demanded payment to transfer those domains to Plaintiffs, asserting that "buying domains isn't a crime" and that "[p]utting them up for sale also isn't a crime." Those statements were made as part of Griffin's initial domain-sale demands on or around May 31, 2026, and were supplemented more recently with a spreadsheet sent by Griffin on June 28, 2026, to show his pricing for those domains. A true and correct screenshot of Griffin's initial demand and subsequent pricing spreadsheet are attached as **Exhibit I.**  Griffin has no trademark or other intellectual-property rights in the ONLI mark or in the individual Plaintiffs' names, made no bona fide prior or noncommercial use of the domains, registered a series of such names, and acquired them not to use them but to sell them to Plaintiffs for a windfall.

## F.  Griffin's Attempted Intrusion into Onli's Computer Systems

31.    Griffin sent Plaintiffs a screen recording, approximately four minutes in length, showing a custom computer script scraping twenty-six repositories from Onli's GitHub organization "OnliSyn." The script—bannered "PWN DHRYL ANTON" and run from a working directory named "doc-got-raped"—created a copy of every repository and ran two programs (TruffleHog and Gitleaks) designed to identify "secrets," meaning sensitive digital credentials hidden within computer code. True and correct copies of images taken from that recording are attached as **Exhibit J.**

32.    Griffin sent the recording to indicate that he had found such secrets, which, if exposed, could subject Onli or its clients to significant losses arising from stolen credentials, for the purpose of attempting to extort Onli. Although Onli's investigation is ongoing, there is

currently no evidence that Griffin was able to access Onli's internal computer systems or obtain its secrets through GitHub.

33. Onli has incurred substantial costs in responding to Griffin's intrusion attempt, including the costs of investigating the attempted access, taking its GitHub repositories offline, and implementing protective measures to limit the harm from any potentially exposed credentials. Those response costs exceed $5,000.

## G. Griffin's Extortion Demands

34. In a subsequent email to Dhryl, Griffin admitted to the campaign, claimed to possess sensitive information taken from Onli's GitHub repositories, displayed a fresh round of impersonation and harassment, and demanded payment of .388 Bitcoin—valued at approximately $25,000—to bring his campaign to an end. A true and correct copy of pages taken from that email are attached as **Exhibit G.**

35. Griffin has admitted to Dhryl that he deliberately employs racist content in his harassment because, in his words: "I know it bugs you" and would get under Dhryl's skin. Griffin also describes his personality as, among other traits, both "crazy" and "vindictive." Griffin's communications containing those admissions are attached as **Exhibit F.**

## H. Griffin's Conduct Is Continuing and Causes Irreparable Harm

36. With each failed attempt to extort Plaintiffs, Griffin's tactics have escalated, posing ever greater threats to Plaintiffs' reputation and to the safety and well-being of Onli's executives and employees. Each time Onli has succeeded in removing an impersonating account, Griffin has rebuilt it within days; the consolidated list of fake accounts and channels attached as **Exhibit G** reflects that pattern of repeated creation. The harm is ongoing and will continue absent an order of this Court.

37. Griffin's counterfeit channels and profiles strip Onli of control over its own mark, message, and reputation, and pair Onli's mark and the individual Plaintiffs' identities with racist and defamatory content. This conduct is occurring during an active fundraising and regulatory period, when Onli's control of its public identity is most critical. The injury to Plaintiffs cannot be fully measured or remedied by money damages alone.

## I.  Earlier Today Griffin has Made Implied Threats of Violence

38. Earlier today, on the morning of June 29, 2026, Griffin continued his pattern of escalation by raising the threat of violence in an email he sent to Dhryl and Michaela.

39. In that email, Griffin expressed that it was his last overture to making a deal and that if Plaintiffs were not willing to make a deal with him, that the thing he was "**most concerned about is the fact that I know how dark web bounties work. The person only gets paid if they accomplish the goal**. I had a team of guys swatting a close friend of mine and their entire family over the twitter username @molly – and I saw firsthand how brutal these guys are." A true and correct copy of that email has been attached as **Exhibit M**.

40. In that email, Griffin goes on to reference his own delusional allegations against Plaintiffs and suggests that he would abuse the legal process as well: "everyone's inside the blast radius of this thing," including landlords, business partners, and employees.

## COUNT I
### Trademark Infringement — 15 U.S.C. § 1114
### (The Onli Corporation against Griffin)

41. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

42. Onli owns United States Trademark Registration No. 5,932,330 for the ONLI mark. That registration is prima facie evidence of the validity of the mark, of Onli's ownership of it,

and of Onli's exclusive right to use the mark in commerce. 15 U.S.C. §§ 1057(b), 1115(a). The ONLI mark is valid and legally protectable.

43. Griffin used the identical ONLI mark, paired with Onli's full company name, logo, and tagline, and linked to Onli's genuine websites, on channels and pages that announced themselves as Onli's official presence, in connection with the identical services Onli offers.

44. Griffin's use of the ONLI mark is likely to cause, and has caused, confusion, mistake, or deception as to the source, sponsorship, or approval of his counterfeit channels and pages. Griffin's deception has already operated among the people with whom Onli deals, including Onli's employees, who received connection requests from the counterfeit "Dhryl Anton" profile, and Lucra Financial, which initially believed the counterfeit channel to be authentic.

45. Griffin's use of the ONLI mark was without Onli's consent and was intended to cause confusion. As a direct and proximate result, Onli has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law, as well as monetary damages.

### COUNT II
**False Designation of Origin and Unfair Competition — 15 U.S.C. § 1125(a)**
**(The Onli Corporation against Griffin)**

46. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

47. Griffin used in commerce false designations of origin and false or misleading representations of fact that are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Griffin with Onli, and as to the origin, sponsorship, or approval of his counterfeit channels and pages.

48.     Griffin copied not merely Onli's name but Onli's entire presentation—its marketing copy, its corporate announcements, its real website, industry, and company size, and the names and likenesses of its executives—to convey the single false message that his counterfeit channels and pages were Onli's authentic online presence.

49.     Griffin's conduct is likely to cause, and has caused, confusion among Onli's customers, investors, and counterparties, including one of Onli's largest clients, who noticed the counterfeit "Dhryl" account and contacted Onli with concerns. As a direct and proximate result, Onli has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law, as well as monetary damages.

### COUNT III
**Cybersquatting — Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)**
**(The Onli Corporation against Griffin)**

50.     Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

51.     The ONLI mark is distinctive and was distinctive at the time Griffin registered the domains identified below.

52.     Griffin registered, trafficked in, or used domain names—including onlitoken.com—that are identical or confusingly similar to the ONLI mark, incorporating the mark in its entirety and adding only generic or pejorative terms.

53.     Griffin registered and used those domains with a bad-faith intent to profit from the ONLI mark. Griffin has no intellectual-property rights in the mark; the domains are not his name; he made no bona fide prior or noncommercial use of them; he registered a series of such names; and he acquired them in order to sell them to Onli for a windfall, demanding payment to transfer them. Onli is entitled to injunctive relief, including the forfeiture, cancellation, or transfer of the offending domains, and to damages.

12

## COUNT IV
### Cyberpiracy of Personal Names — 15 U.S.C. § 8131
### (Dhryl Anton and Michaela Kathrens Anton against Griffin)

54. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

55. Griffin registered the domain names dhrylanton.org and katherineanton.com, which consist of the names of the individual Plaintiffs Dhryl Anton and Michaela Kathrens Anton, respectively, without their consent.

56. Griffin registered those domain names with the specific intent to profit from the individual Plaintiffs' names by selling the domains for financial gain, demanding payment to transfer them as part of the same scheme. Griffin's registration of ianmcfall.org, consisting of the name of Onli's Chief Technology Officer, further confirms the pattern.

57. Dhryl and Michaela are each entitled to injunctive relief, including the forfeiture or transfer of the offending domains, and to the other remedies the statute provides.

## COUNT V
### Computer Fraud and Abuse Act — 18 U.S.C. § 1030
### (The Onli Corporation against Griffin)

58. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

59. Onli's GitHub repositories and related internal systems are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2) because they are used in and affect interstate commerce.

60. Griffin intentionally attempted to access Onli's protected computers without authorization in order to obtain information, including by deploying a custom script against Onli's "OnliSyn" GitHub organization to harvest credentials and "secrets" that could be used to reach Onli's private systems, in violation of 18 U.S.C. § 1030(a) and the attempt provision of 18 U.S.C. § 1030(b).

61. Griffin further threatened to cause damage to, and to obtain information from, Onli's protected computers, and demanded money and other consideration in relation to that conduct, with intent to extort, in violation of 18 U.S.C. § 1030(a)(7).

62. Onli suffered a loss aggregating at least $5,000 in value during a one-year period as a result of Griffin's conduct, including the costs of responding to the offense, conducting a damage assessment, and restoring and protecting its systems and data. Onli is entitled to injunctive and other equitable relief, and to compensatory damages, under 18 U.S.C. § 1030(g).

## COUNT VI
### New Jersey Computer Related Offenses Act — N.J.S.A. 2A:38A-1 et seq.
### (The Onli Corporation against Griffin)

63. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

64. Griffin purposely or knowingly, and without authorization, accessed or attempted to access Onli's computers, computer systems, and computer networks, in violation of N.J.S.A. 2A:38A-3.

65. Onli is a person or enterprise that has been damaged in its business or property as a result of Griffin's conduct. The New Jersey Computer Related Offenses Act imposes no monetary-loss threshold and expressly reaches the attempt to access a computer, computer system, or computer network. Onli is entitled to compensatory and punitive damages, injunctive relief, and attorneys' fees and costs under N.J.S.A. 2A:38A-3.

## COUNT VII
### Defamation
### (The Onli Corporation and Dhryl Anton against Griffin)

66. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

67. Griffin published false and defamatory statements of fact concerning Onli and Dhryl, including fabricated "news" posts and false video titles and descriptions attacking Onli's

integrity and corporate conduct, and depictions conveying that Dhryl is a pedophile and has engaged in serious criminal and sexual misconduct.

68. Griffin published these statements without privilege to third parties—broadly, on YouTube and LinkedIn, and through posts and connection requests aimed at Onli's customers and investors—knowing they were false and with the purpose of inflicting harm.

69. The depictions of Dhryl as a criminal and as having committed serious sexual misconduct are defamatory per se, so that injury to reputation is presumed and no proof of special damages is required. As a corporation, Onli may sue to protect its business reputation, which Griffin's statements have disparaged before the very audience on which Onli's business depends. Onli and Dhryl have suffered and will continue to suffer harm to their reputations, and are entitled to injunctive relief and damages.

## COUNT VIII
### Invasion of Privacy — Public Disclosure of Private Facts
### (Dhryl Anton and Michaela Kathrens Anton against Griffin)

70. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

71. Griffin gave publicity to matters concerning the private lives of Dhryl and Michaela, including their home address, financial-account information, and images of their private residence, by publishing them on YouTube and LinkedIn and by circulating apparent drone footage of their home.

72. These matters were genuinely private; their disclosure would be highly offensive to a reasonable person, particularly when joined to Griffin's racist threats and surveillance; and the public has no legitimate interest in them. Dhryl and Michaela have suffered and will continue to suffer injury, and are entitled to injunctive relief and damages.

15

## COUNT IX
### Invasion of Privacy — Intrusion on Seclusion
### (Dhryl Anton and Michaela Kathrens Anton against Griffin)

73. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

74. Griffin intentionally intruded upon the solitude and seclusion of Dhryl and Michaela and upon their private affairs by conducting drone surveillance of, and recording, their private residence—a space in which they reasonably expect privacy.

75. Griffin's intrusion would be highly offensive to a reasonable person. The wrong is the invasion itself and requires no publication. Dhryl and Michaela have suffered and will continue to suffer injury, and are entitled to injunctive relief and damages.

## COUNT X
### False Light
### (Dhryl Anton against Griffin)

76. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

77. Griffin gave publicity to matters that placed Dhryl in a false light by impersonating him outright—operating a counterfeit "Dhryl Anton—Founder & CEO" profile and an "official" Onli page, and posting fabricated statements in his name—thereby attributing to Dhryl words and conduct that were never his, including racist and fraudulent messages.

78. The false light in which Griffin placed Dhryl would be highly offensive to a reasonable person, and Griffin acted with knowledge of, or reckless disregard for, the falsity of the matters publicized. Dhryl has suffered and will continue to suffer injury, and is entitled to injunctive relief and damages.

## COUNT XI
### Appropriation of Name and Likeness
### (Dhryl Anton and Michaela Kathrens Anton against Griffin)

79. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

16

80.    Griffin appropriated Dhryl's name, likeness, photograph, and biographical details, without consent, to build the counterfeit "Dhryl Anton" LinkedIn profile, the counterfeit YouTube channel, and other fake accounts and channels reflected in **Exhibit G**, and appropriated Michaela's likeness, without consent, in connection with that content, including the channel banner and video thumbnails.

81.    Griffin appropriated the individual Plaintiffs' names and likenesses for his own benefit—to lend an appearance of legitimacy and authenticity to his counterfeit pages and thereby to increase the leverage of his extortionate scheme. Dhryl and Michaela have suffered and will continue to suffer injury, and are entitled to injunctive relief and damages.

## COUNT XII
### Intentional Infliction of Emotional Distress
### (Dhryl Anton and Michaela Kathrens Anton against Griffin)

82.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

83.    Griffin acted intentionally and for the avowed purpose of tormenting Dhryl and Michaela, admitting that he intentionally employs racism in his harassment to maximize the emotional toll that it imposes on Dhryl.

84.    Griffin's conduct—circulating racist depictions of Dhryl and his child, branding Dhryl a pedophile in images sent to the Antons' own relatives, opening counterfeit "Dhryl Anton" accounts on pornography websites, publishing the family's home address, and surveilling their home by drone—is so extreme and outrageous as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

85.    Griffin's conduct has proximately caused Dhryl and Michaela to suffer emotional distress so severe that no reasonable person could be expected to endure it. Dhryl and Michaela are entitled to injunctive relief and damages, including punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant Griffin, and grant the following relief:

A.   Temporary, preliminary, and permanent injunctive relief enjoining Griffin and those acting in concert with him from using the ONLI mark, the "Onli" name, Onli's logo or tagline, or any confusingly similar variation, in connection with any website, social-media account, channel, page, or profile, or otherwise to represent that Griffin or any account he controls is associated with Onli;

B.   Enjoining Griffin from creating or operating any account, channel, page, or profile that purports to be Onli or any Onli executive, and from otherwise using the name or likeness of Dhryl Anton, Michaela Kathrens Anton, Ian McFall, or any other Onli officer or employee in content, communications, or media posted online;

C.   Enjoining Griffin from registering, using, trafficking in, or offering to sell any domain name that incorporates the ONLI mark or the name of any Plaintiff or Onli executive—including onlitoken.com, dhrylanton.org, ianmcfall.org, and katherineanton.com—and ordering Griffin to preserve those domains and associated registrar accounts and to transfer them to the respective Plaintiff, and prohibiting their transfer, sale, or relinquishment to anyone other than the respective Plaintiff;

D.   Ordering Griffin to disable the counterfeit YouTube channel and LinkedIn pages, the other fake accounts and channels reflected in **Exhibit G**, and any other counterfeit Onli or Anton account within his control, and to take all steps within his power to remove them, and enjoining Griffin from knowingly making false

18

statements (including artificial-intelligence-generated content created at his direction) concerning Plaintiffs;

E.  Enjoining Griffin from publishing or otherwise using the home address, personal contact information, financial-account information, or other private personal information of the Anton family or any Onli employee;

F.  Enjoining Griffin from engaging in any unauthorized access of Onli's protected computer systems; from using, transmitting, or publishing any credentials, "secrets," or other information obtained from those systems; ordering him to identify and return any such information to Onli; and enjoining any further extortion concerning Onli's systems or information;

G.  Ordering Griffin to preserve, and prohibiting him from deleting, transferring, or altering, the copied Onli materials and any files, data, or communications concerning Plaintiffs' claims, unless and until those materials are provided to Plaintiffs;

H.  Awarding Plaintiffs their actual and compensatory damages, Griffin's profits, and statutory damages as permitted by law, including statutory damages for cybersquatting under 15 U.S.C. § 1117(d), in amounts to be determined at trial;

I.  Awarding Plaintiffs punitive damages in an amount sufficient to punish and deter Griffin's conduct;

J.  Awarding Plaintiffs their reasonable attorneys' fees and costs of suit, including under 15 U.S.C. § 1117(a) and N.J.S.A. 2A:38A-3, together with pre-judgment and post-judgment interest; and

K.  Granting such other and further relief as the Court deems just and proper.

19

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Dated:  June 29, 2026

WEINER LAW GROUP LLP
Attorneys for Plaintiffs

By: _____
Christopher J. Seelinger, Esq.
629 Parsippany Road
Parsippany, New Jersey 07054
(973) 403-1100
cseelinger@weiner.law

20

## VERIFICATION OF MICHAELA KATHRENS ANTON

I, Michaela Kathrens Anton, declare as follows:

1.  I am the Chief Operating Officer of The Onli Corporation, a plaintiff in this action, and I am also a plaintiff in my individual capacity. I manage Onli's response to the conduct described in the foregoing Verified Complaint, and I am familiar with the facts set forth in it based on my personal knowledge and my review of Onli's business records.

2.  I have read the foregoing Verified Complaint. The factual allegations concerning Onli, its intellectual property and systems, and the conduct described therein are true and correct based on my personal knowledge, except as to matters stated on information and belief, and as to those matters I believe them to be true.

3.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 29, 2026.

Michaela Kathrens Anton

## VERIFICATION OF DHRYL ANTON

I, Dhryl Anton, declare as follows:

1. I am the founder and Chief Executive Officer of The Onli Corporation, a plaintiff in this action, and I am also a plaintiff in my individual capacity.

2. I have read the foregoing Verified Complaint. The factual allegations set forth in it, including those concerning the conduct directed at me and my family and the resulting harm and distress I have suffered, are true and correct based on my personal knowledge, except as to matters stated on information and belief, and as to those matters I believe them to be true.

3. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 24th, 2026.

Dhryl Anton