Thomas Griffin
Defendant, Pro Se
76 Oakwood Village, Apartment 6
Flanders, NJ 07836
(201) 259-8860
tom@thegrif.net

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE ONLI CORPORATION, DHRYL ANTON, and MICHAELA KATHRENS ANTON,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS GRIFFIN,<br><br>Defendant. | Civil Action No. 2:26-cv-07916 (JKS) (SDA)<br><br>Hon. Jamel K. Semper, U.S.D.J.<br>Hon. Stacey D. Adams, U.S.M.J.<br><br>**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION (ECF No. 2, converted under ECF No. 11 ¶ 8)** |

Converted motion returnable before the Hon. Jamel K. Semper, U.S.D.J., on a date to be set by the Court (ECF No. 11 ¶ 8). Opposition filed and served September 28, 2026.

**ORAL ARGUMENT NOT REQUESTED**

Thomas Griffin, Defendant, pro se
On the brief: Thomas Griffin

# TABLE OF CONTENTS


PRELIMINARY STATEMENT....1

COUNTER-STATEMENT OF FACTS....3

A. The conduct at issue ended before Plaintiffs filed this action....3

B. Plaintiffs held their own application in abeyance for seven weeks, and the Consent Order has held....5

C. What Plaintiffs' exhibits leave out....6

D. The Scottsdale Police Department's findings....8

E. The Ferguson Declaration....9

LEGAL STANDARD....10

ARGUMENT....11

POINT I — PLAINTIFFS CANNOT SHOW LIKELY IRREPARABLE HARM: THE CONDUCT ENDED BEFORE SUIT AND HAS NOT RECURRED....11

A. Every restrained activity had stopped before the Complaint was filed....12

B. Plaintiffs' seven-week abeyance and their September 14 letter are inconsistent with irreparable harm....13

C. The Lanham Act presumption is rebutted....15

D. The voluntary-cessation doctrine does not supply the showing Plaintiffs lack....16

POINT II — PLAINTIFFS HAVE NOT SHOWN A LIKELIHOOD OF SUCCESS ON THE CLAIMS THAT DRIVE THE EXPANDED RELIEF....17

A. The Computer Fraud and Abuse Act and CROA counts (Counts V–VI; proposed ¶ (f))....18

B. The privacy counts (Counts VIII–IX; proposed ¶ (e))....20

C. The June 29 email is not a threat, and the Complaint misdescribes it....21

D. The Lanham Act counts (Counts I–III; proposed ¶¶ (a)–(d))....22

E. The defamation and false-light counts (Counts VII, X) cannot support a prior restraint....24

POINT III — THE PROPOSED ORDER IS A PRIOR RESTRAINT AND DOES NOT MEET RULE 65(d)....26

POINT IV — THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGH AGAINST THE EXPANDED RELIEF....29

POINT V — ANY RELIEF MUST BE LIMITED TO THE CONSENT ORDER'S MUTUAL TERMS, CONDITIONED ON SECURITY, AND PRECEDED BY A HEARING ON DISPUTED FACTS......31

CONCLUSION......33

# TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ..... 16

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) ..... 24

*Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172 (3d Cir. 1990) ..... 32

*Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86 (3d Cir. 1992) ..... 10, 13

*Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939 (3d Cir. 1993) ..... 25

*Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211 (3d Cir. 2005) ..... 16, 17

*Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351 (3d Cir. 1980) ..... 13

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024) ..... 29

*Elrod v. Burns*, 427 U.S. 347 (1976) ..... 29

*Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205 (3d Cir. 2014) ..... 11

*Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100 (3d Cir. 1988) ..... 32

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ..... 16

*G.D. v. Kenny*, 205 N.J. 275 (2011) ..... 20

*Hecht Co. v. Bowles*, 321 U.S. 321 (1944) ..... 17

*hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022) ..... 18

*Hohe v. Casey*, 868 F.2d 69 (3d Cir. 1989) ..... 10

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) ..... 23, 27

*In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) ..... 19

*John R. Thompson Co. v. Delicatessen & Cafeteria Workers Union, Local 410*, 126 N.J. Eq. 119 (Ch. 1939) ..... 24

*Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004) ..... 11

*Kramer v. Thompson*, 947 F.2d 666 (3d Cir. 1991) ..... 24

*Lanin v. Borough of Tenafly*, 515 F. App'x 114 (3d Cir. 2013) ..... 14

*Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F. Supp. 602 (S.D.N.Y. 1979) ..... 14

*Mallet & Co. v. Lacayo*, 16 F.4th 364 (3d Cir. 2021) ..... 26, 32, 33

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ..... 24

*Nichino America, Inc. v. Valent U.S.A. LLC*, 44 F.4th 180 (3d Cir. 2022) ..... 15

*NRA Grp., LLC v. Durenleau*, 154 F.4th 153 (3d Cir. 2025) ..... 18

*Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971) ..... 25, 27

*P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504 (3d Cir. 2005)....................20

*Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806 (1945)....................30

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017)....................10

*Romaine v. Kallinger*, 109 N.J. 282 (1988)....................20

*Schmidt v. Lessard*, 414 U.S. 473 (1974)....................26

*SEC v. Gentile*, 939 F.3d 549 (3d Cir. 2019)....................17

*ThermoLife Int'l LLC v. Connors*, No. 2:13-cv-4399 (KM), 2014 WL 1050789 (D.N.J. Mar. 17, 2014)....................25

*United States v. W. T. Grant Co.*, 345 U.S. 629 (1953)....................17

*Van Buren v. United States*, 593 U.S. 374 (2021)....................18, 19

*Warner Lambert Co. v. McCrory's Corp.*, 718 F. Supp. 389 (D.N.J. 1989)....................14

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)....................10, 11, 16

**Statutes**

15 U.S.C. § 1116(a)....................11, 15

18 U.S.C. § 1030....................18, 19

**Rules**

Fed. R. Civ. P. 65(c)....................32, 33

Fed. R. Civ. P. 65(d)....................26, 28, 33

## PRELIMINARY STATEMENT

A preliminary injunction restrains what a defendant is about to do, not what he has already stopped doing. Every restraint Plaintiffs propose (ECF No. 2-1 at 2–4 (PageID 106–108)) is aimed at conduct that ended before this action was filed—as their own Exhibit M, a message Defendant sent hours before they sued, says in its first sentence: "after I took all of the Onli content down." ECF No. 1-1 at 51 (PageID 73). YouTube terminated the channel on June 13, 2026; LinkedIn removed the pages; the second channel's videos were made private on June 29; eighteen of the twenty-six domains have been transferred to Plaintiffs and the other eight await Plaintiffs' choice of route; and Plaintiffs secured the public GitHub repositories on June 12, hours after Defendant told their Chief Technology Officer they were public. Three months later, nothing has recurred.

Plaintiffs' own conduct confirms that no emergency exists. Having asked this Court for emergency relief on June 30, they agreed on July 27 to hold their application in abeyance for twenty-eight days, then for three weeks more, and on September 14 asked the Court to schedule a settlement conference and "confirm the return date." ECF Nos. 11 ¶ 1, 13, 14. In two months under the Consent Order's mutual restraints, Plaintiffs have not once invoked its enforcement

procedure. ECF No. 11 ¶ 10. A party facing irreparable harm does not hold its own application in abeyance for seven weeks.

What Plaintiffs seek now is not the status quo. The proposed order reaches well past the Consent Order: it would bar Defendant from "using the name . . . or biographical information of Dhryl Anton [or] Michaela Kathrens Anton . . . in any content, communication, or media posted or transmitted online"—and, because it omits the Consent Order's carve-out for statements in judicial proceedings (ECF No. 11 ¶ 2(h)), a prohibition on discussing this lawsuit—while dropping the Consent Order's reasonable-person standard for false statements, its exception for information already public, and its limitation to non-public computer systems. ECF No. 2-1 at 2–4 (PageID 106–108); cf. ECF No. 11 ¶ 2.

Nor have Plaintiffs shown a likelihood of success on the claims that drive the expanded relief. The only evidence of third-party confusion is a declaration describing a redirect from dhryl.com that the domain's records and YouTube's termination date contradict. The "attempted intrusion" was the viewing of repositories that Plaintiffs had left open to the entire internet, which the Verified Complaint itself concedes yielded no access to any internal system. ECF No. 1 ¶ 32. The "home address" is the principal office address Mr. Anton filed with the Wyoming Secretary of State. The "drone footage" is a Google Earth render. And

the "threat of violence" is a sentence about Defendant's own 2020 work with the United States Secret Service, which the Complaint misdescribes as conditioned on payment. ECF No. 1 ¶ 39; ECF No. 2 at 13 (PageID 86). The Scottsdale Police Department, reviewing Plaintiffs' own submissions, "did not find any direct threats made by either" party and closed its file. Griffin Decl. Ex. 5 at 7.

The motion should be denied. If the Court is inclined to grant any relief, it should be the mutual relief the parties have lived under since July 27—the terms of ECF No. 11 ¶ 2(a)–(g)—and nothing broader.

## COUNTER-STATEMENT OF FACTS

### A. The conduct at issue ended before Plaintiffs filed this action.

The YouTube channel @onlicorporation existed from May 29 to June 13, 2026. It carried a ten-song parody album, each video described as parody and satire, and copies of twenty-nine promotional videos that The Onli Corporation had itself posted publicly on Vimeo, under titles and descriptions stating Defendant's opinions of the company's claims. Griffin Decl. ¶ 3. YouTube terminated the channel at 5:15 a.m. on June 13, 2026. *Id.* ¶ 4 & Ex. 1. Plaintiffs plead the termination. ECF No. 1 ¶ 23.

Every video on the @dhryl channel, created June 16, was set to private on June 29, 2026, before Plaintiffs filed, and the channel has published nothing since.

The channel was not deleted: its records are preserved, and the handle—Mr. Anton's given name—is held for transfer to him, as Plaintiffs' counsel was told in writing on July 9, without objection since; its former title, image, and description were removed on September 28, 2026 (Griffin Decl. Ex. 11 at 1), and Defendant consents to an order directing the transfer. Griffin Decl. ¶ 5. The LinkedIn pages, created June 11, were removed by LinkedIn. *Id.* ¶ 7. The usernames registered on June 17 never carried a single post and were deleted on June 29. *Id.* ¶ 9. The copies of the OnliSyn repositories on Defendant's access-restricted GitLab instance—viewable only by an account created for Mr. Anton—came down on June 29, before Plaintiffs filed; the archives are preserved, unpublished, as the Consent Order requires. *Id.* ¶ 19.

The domain names have been transferred. Defendant handed Plaintiffs' counsel the registrar account and its credentials on July 14 and again on July 30; no one signed in. Plaintiffs did not initiate the transfers until September 23; eighteen names were confirmed transferred on September 25, and the eight .link names, which returned registrar errors and cannot be delisted, await Plaintiffs' choice between the two completion routes Defendant offered on September 28. Griffin Decl. ¶ 14 & Exs. 12–13; ECF No. 11 ¶ 2(c).

At 3:44 a.m. on June 29, 2026, Defendant wrote to Mr. and Ms. Anton: "In the spirit of trying to lower the temperature . . . I have done the following: • set all YouTube videos to private (if I missed one, please let me know) • removed Onli platform source code you had inadvertently published on Github from the Gitlab installation running on dhryl.com." Griffin Decl. ¶ 28 & Ex. 7 at 1. At 12:25 p.m. he forwarded that message with the note Plaintiffs filed as Exhibit M, which begins: "I'll admit it - I was honestly (hoping?) expecting a thank you - or at least a nod - after I took all of the Onli content down." ECF No. 1-1 at 51 (PageID 73). Plaintiffs filed the Verified Complaint later that day.

Since June 29, Defendant has created no account, channel, page, or profile using the Onli name or any Plaintiff's name or likeness; has published nothing concerning Plaintiffs; and has communicated with them only through counsel and in papers filed in this action. Griffin Decl. ¶ 36.

**B. Plaintiffs held their own application in abeyance for seven weeks, and the Consent Order has held.**

Plaintiffs filed the Verified Complaint on June 29 and sought temporary restraints the next day. ECF Nos. 1, 2. On July 27 the Court entered the Consent Order, which "held in abeyance" Plaintiffs' application "for the next 28 days," imposed mutual restraints, and provided for conversion into a preliminary-injunction motion if settlement failed. ECF No. 11 ¶¶ 1, 2, 8. On August 25 the

Court granted the parties' joint request for a three-week extension to September 14. ECF No. 13. On September 14 Plaintiffs wrote that the application "is automatically converted" and asked the Court to "confirm the return date." ECF No. 14 at 1 (PageID 224).

**C. What Plaintiffs' exhibits leave out.**

**Plaintiffs' Exhibit M.** The Complaint alleges that in the June 29 email "Griffin expressed that it was his last overture to making a deal and that if Plaintiffs were not willing to make a deal with him," he was "most concerned about . . . how dark web bounties work." ECF No. 1 ¶ 39. The brief goes further: "he warned that if Plaintiffs would not pay him," the same. ECF No. 2 at 13 (PageID 86). The email contains no request for payment, no offer of a deal, and no conditional clause. ECF No. 1-1 at 51 (PageID 73). It is a forward; Plaintiffs cut it at the forward line, omitting the 3:44 a.m. message beneath it reporting that the content was down. Griffin Decl. ¶¶ 28–29 & Ex. 7. Mr. Anton's reply, twenty-six minutes later: "You could have stopped at anytime . . . If I were you I would I would get an attorney." *Id.* ¶ 30 & Ex. 7 at 3.

**Plaintiffs' Exhibit I.** The Complaint quotes Defendant's June 1 statement (dated "on or around May 31" in the Complaint) that "buying domains isn't a crime" and "[p]utting them up for sale also isn't a crime," and characterizes it as

an "initial domain-sale demand[]." ECF No. 1 ¶ 30. Four hours after that message, Mr. Anton wrote: "So $8000 / You sell me the domains / You stop with the videos / I don't want any documents. . . . Done," and then: "I am not paying out of fear of exposure- there is no there there / I am paying you because your operation taught us an important lesson we clearly needed and there are real holes in our security processes at $8k we needed the pain." Griffin Decl. ¶ 11 & Ex. 3. Defendant withdrew within the hour—"I'm taking the deal off the table. . . . Stay away."—wrote at 12:51 p.m. that any deal would have to be papered through a lawyer, and told Plaintiffs' lawyers the next day that he was "not interested in resolving anything with him." *Id.* ¶¶ 11–12 & Exs. 3, 4. The $8,000 and $10,000 figures that the police summaries attribute to Defendant were Mr. Anton's and his lawyer's. *Id.* ¶ 12 & Ex. 5 at 5, 7. The spreadsheet on the second page of Exhibit I (PageID 55) is a registrar export of the prices at which Defendant had publicly listed the names, sent to Plaintiffs on June 28; the lease-to-own and volume-discount text is the registrar's boilerplate. *Id.* ¶ 13. No domain was ever sold; eighteen have been transferred without payment and the other eight are held for Plaintiffs. *Id.* ¶¶ 13–14. Whether the listings reflect a bad-faith intent to profit is a merits question that the transfer has taken out of this motion. *See* Point II.D, *infra*.

**Plaintiffs' Exhibits F and G.** Both are excerpts from one email of June 17, 2026. ECF No. 1-1 at 23, 25–28 (PageID 45, 47–50). The words "crazy" and "vindictive," which the Complaint presents as Defendant's self-description (ECF No. 1 ¶¶ 2, 35), appear in a list introduced by "on my personality bingo card I've got:"—a list that Defendant states catalogued labels that had been applied to him in the course of the dispute. Griffin Decl. ¶ 22 & Ex. 6. The 0.388 bitcoin figure, which the Complaint ties to "sensitive information taken from Onli's GitHub repositories" (ECF No. 1 ¶ 34), is the domain-and-profiles price first stated on June 1—eleven days before the repositories came to Defendant's attention. Griffin Decl. ¶ 23 & Ex. 6.

**D. The Scottsdale Police Department's findings.**

On June 1, 2026, Ms. Anton reported Defendant to the Scottsdale Police Department. She described Defendant's "outdated banking information" post; the reviewing officer examined the YouTube channel and recorded that its descriptions stated the poster's "opinions regarding the company and its products." Griffin Decl. Ex. 5 at 1–2.

Officer Ada Lea reviewed the materials Ms. Anton had submitted during June 2026 and, on July 28 and 29—after the Complaint was verified and filed—spoke with both Antons and their attorney. Her findings: "[t]he correspondence

appeared to be more argumentative (on both sides) than threatening"; "I did not find any direct threats made by either [Defendant] or Dhryl"; the vehicle at the Antons' gate on June 17 had a registered owner with "no connection whatsoever to" Defendant; and "selling the domain names to them for a price . . . did not constitute extortion." She "would be inactivating the case since I did not believe the information provided supported the extortion charge." Griffin Decl. Ex. 5 at 7.

**E. The Ferguson Declaration.**

The only third party Plaintiffs offer on confusion or harm is Scott Ferguson of Lucra Financial LLC, who declares that a Google Alert led him to the @onlicorporation channel "(reached by way of a forward / redirect from the domain dhryl.com)." ECF No. 1-1 at 17 (PageID 39) ¶ 2; ECF No. 1 ¶¶ 22, 44. The record fixes the sequence: dhryl.com forwarded nowhere until 9:38 p.m. on June 16, 2026; the channel had been terminated on June 13; and the one forward ever configured—created at 10:07 p.m. Eastern on June 16 (02:07 UTC June 17)—pointed to a music playlist on a different channel. Cloudflare's complete audit log records nothing else. Griffin Decl. ¶ 33 & Ex. 9. The two Lucra videos on the channel—the "internal" video Mr. Ferguson says was "exposed to the public"—were copies of videos the "Onli" Vimeo account itself uploaded in 2021 and 2023, and both remain publicly viewable there; neither was ever on the @dhryl

channel. *Id.* ¶ 34 & Ex. 11 at 2–3. Plaintiffs also plead that Mr. Ferguson "was the first to notice" the channel (ECF No. 1 ¶ 22) and, one paragraph later, that Onli itself reported the channel to YouTube the day it was created (*id.* ¶ 23). A Rule 11 motion directed to this material was served September 22, 2026. Griffin Decl. ¶ 35 & Ex. 10.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The movant must show a likelihood of success on the merits—in this Circuit, a chance "significantly better than negligible but not necessarily more likely than not"—and that it is "likely to suffer irreparable harm in the absence of preliminary relief"; only if those two "gateway" showings are made does the court weigh the balance of equities and the public interest. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176, 179 (3d Cir. 2017); *Winter*, 555 U.S. at 20. A "possibility" of irreparable harm is not enough. *Winter*, 555 U.S. at 22. In this Circuit the movant must make a "clear showing of *immediate* irreparable harm," and "a showing of irreparable harm is insufficient if the harm will occur only in the indefinite future." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (quoting *Hohe v. Casey*, 868 F.2d 69, 72 (3d

Cir. 1989)). At this stage the Court may consider affidavits and other materials that would not be admissible at trial. *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 718–19 (3d Cir. 2004). No presumption of irreparable harm applies to any claim here except the Lanham Act counts. Before Congress enacted the rebuttable presumption now in 15 U.S.C. § 1116(a), the Third Circuit held that no such presumption exists even under the Lanham Act, *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 216 (3d Cir. 2014); the statutory presumption reaches only "a violation identified in" § 1116(a). For the defamation, false-light, privacy, and computer-access claims that drive proposed ¶¶ (b), (d), (e), and (f), Plaintiffs must prove irreparable harm on the evidence.

## ARGUMENT

### POINT I — PLAINTIFFS CANNOT SHOW LIKELY IRREPARABLE HARM: THE CONDUCT ENDED BEFORE SUIT AND HAS NOT RECURRED

The irreparable-harm inquiry looks forward. The question is not whether Plaintiffs were harmed in May and June; it is whether, absent an order today, they are "likely to suffer irreparable harm before a decision on the merits can be rendered." *Winter*, 555 U.S. at 22. On that question the record is one-sided.

**A. Every restrained activity had stopped before the Complaint was filed.**

Each subparagraph of the proposed order answers to conduct that is over. Subparagraphs (a), (b), and (d)—the Onli mark, impersonation, and the named accounts—address a YouTube channel that YouTube terminated on June 13, a second channel whose every video was made private on June 29, whose page was stripped of any reference to Mr. Anton on September 28, and which is held for transfer to him, and LinkedIn pages that LinkedIn removed. Griffin Decl. ¶¶ 4–7 & Ex. 1. Subparagraph (c)—the domains—addresses names that now belong to Plaintiffs or are held for them. *Id.* ¶ 14. Subparagraph (f)—computer systems—addresses repositories that Plaintiffs themselves secured on June 12, within hours of Defendant telling their CTO they were public, and copies that Defendant took offline on June 29. *Id.* ¶¶ 15–19. Subparagraph (e)—private information—addresses a video description that disappeared with the channel on June 13 and an address that is a public corporate filing. *Id.* ¶¶ 8, 20 & Ex. 2. Subparagraph (h)—threats—addresses correspondence in which the reviewing officer "did not find any direct threats made by either" side. *Id.* Ex. 5 at 7.

The @onlicorporation channel and the LinkedIn pages were removed by the platforms; that much was never Defendant's to reverse. Everything else Defendant took down or gave up himself, before he was sued. Griffin Decl. ¶¶ 9,

14, 19 & Ex. 7 at 1. And the Consent Order has bound both parties for two months without an enforcement application by either. ECF No. 11 ¶¶ 8, 10. "A threat of disclosure may establish immediate irreparable harm but 'further' disclosure of something already revealed cannot." *Campbell Soup*, 977 F.2d at 92. *Campbell Soup* vacated a preliminary injunction entered by this Court on exactly that ground: "the record shows ConAgra had discontinued its past use of Campbell's process and has no plans to renew" it, and an injunction will not issue "to restrain one from doing what he is not attempting and does not intend to do." *Id.* at 92–93 (quoting *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980)). "Were ConAgra to resume its efforts . . . or indicate resumption was imminent, the situation would be otherwise." *Id.* at 93. Nothing here has resumed.

**B. Plaintiffs' seven-week abeyance and their September 14 letter are inconsistent with irreparable harm.**

Plaintiffs will say the abeyance cost them nothing because the Consent Order restrained Defendant meanwhile. That is the point: its narrower, mutual terms have sufficed for two months without any claim of breach, and the motion now seeks something broader. A movant who holds its emergency application in abeyance for twenty-eight days, extends it three weeks, then asks the Court to schedule a settlement conference and "confirm the return date," ECF No. 14 at 1

(PageID 224), has told the Court what it needs to know about immediacy. The domains make the point concrete. On July 14—two weeks before the Consent Order—Defendant handed Plaintiffs' counsel the registrar account itself, with credentials by which Plaintiffs could take sole control of every domain that day; he reissued them on July 30. No one signed in, and the transfers were not initiated until September 23. Griffin Decl. ¶ 14 & Exs. 12–13. A party that swears a thing is inflicting irreparable harm, and is then handed the keys to it, takes the keys. Delay "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Warner Lambert Co. v. McCrory's Corp.*, 718 F. Supp. 389, 393 (D.N.J. 1989) (quoting *Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F. Supp. 602, 609 (S.D.N.Y. 1979)); see *Lanin v. Borough of Tenafly*, 515 F. App'x 114, 118 (3d Cir. 2013) (non-precedential) (affirming denial where delay was "sufficient proof that the risk of immediate irreparable harm did not exist"). Delay "may be excused where the party seeking a preliminary injunction delays only in the reasonable belief that negotiations may resolve the dispute," *Lanin*, 515 F. App'x at 118, but Plaintiffs did not delay filing. They filed, asked for emergency relief, then held their own application in abeyance for seven weeks on terms they found adequate—and left the domains untaken for ten.

**C. The Lanham Act presumption is rebutted.**

Plaintiffs invoke the rebuttable presumption of irreparable harm in 15 U.S.C. § 1116(a). ECF No. 2 at 26 (PageID 99). Under *Nichino America, Inc. v. Valent U.S.A. LLC*, 44 F.4th 180 (3d Cir. 2022), that presumption shifts only the burden of production, and it is rebutted by evidence "sufficient for a reasonable factfinder to conclude that the consumer confusion is unlikely to cause irreparable harm"; once rebutted, it "simply disappears like a bursting bubble," and the burden returns to the plaintiff to show irreparable harm on the evidence. *See id.* at 186–87. The rebuttal showing is "slight": "[t]hat small quantum of evidence is all we have required to rebut Rule 301 presumptions." *Id.* at 185 n.10, 186–87. The evidence here is far more: the channel that carried the ONLI mark was terminated by the platform; the second channel has published nothing since June 29 and now displays nothing referring to Plaintiffs; eighteen domains have been transferred and eight are held for Plaintiffs; and no content using the mark has appeared in three months. Griffin Decl. ¶¶ 4, 14, 36. Plaintiffs' brief rests the presumption on the assertion that "Griffin rebuilt both the YouTube channel and the LinkedIn page within days of their removal, which shows the harm is ongoing . . . ." ECF No. 2 at 26 (PageID 99). The @dhryl channel, created June 16 after the termination, is the rebuild Plaintiffs describe; its videos were made private

thirteen days later, before suit, and have stayed private since. Nothing was rebuilt after June 29. And the presumption, where it applies at all, applies only to the Lanham Act counts; it does nothing for the claims behind proposed ¶¶ (d), (e), and (f). See Legal Standard, supra.

**D. The voluntary-cessation doctrine does not supply the showing Plaintiffs lack.**

Plaintiffs may argue that voluntary cessation does not moot a claim for injunctive relief. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Defendant does not contend that the claims are moot; he contends that Plaintiffs have not shown under *Winter* that irreparable harm is likely between now and judgment. Those are different questions. *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 213–14 (3d Cir. 2005), and *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 95 (2013), apply the same rule to a party's voluntary cessation in trademark cases: the case is not moot unless it is "absolutely clear" the conduct cannot reasonably be expected to recur, lest the party be "free to return to [its] old ways." Defendant accepts both: the claims are live. But those cases place the mootness burden on the defendant; they do not lift from the movant its burden under *Winter* to show that interim relief is needed now. On that question the rule has been settled for seventy years: even where the defendant discontinued the conduct only after suit was filed, "the moving party

must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (affirming denial of injunction). The Third Circuit calls this "the most basic rule of preventive injunctive relief—that the plaintiff must show a cognizable risk of future harm," because "[t]he historic injunctive process was designed to deter, not to punish." *SEC v. Gentile*, 939 F.3d 549, 556 (3d Cir. 2019) (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)). Here the discontinuance preceded the suit and has held for three months. It is not the bare promise *Century 21* and *Already* distrust: two removals were the platforms', the completed domain transfers cannot be undone, the @dhryl transfer is offered, and the rest has been enforced by court order for two months.

## POINT II — PLAINTIFFS HAVE NOT SHOWN A LIKELIHOOD OF SUCCESS ON THE CLAIMS THAT DRIVE THE EXPANDED RELIEF

Defendant addresses only the claims on which the proposed order's departures from the Consent Order depend; as to each, Plaintiffs' showing rests on a characterization that their own exhibits or public records contradict.

**A. The Computer Fraud and Abuse Act and CROA counts (Counts V–VI; proposed ¶ (f)).**

The CFAA reaches access "without authorization." 18 U.S.C. § 1030(a)(2). Whether access is authorized is "a gates-up-or-down inquiry—one either can or cannot access a computer system." *Van Buren v. United States*, 593 U.S. 374, 390 (2021). The Third Circuit has since read that inquiry as targeting "code-based hacking," holding that "absent evidence of code-based hacking, the CFAA does not countenance claims premised on a breach of workplace computer-use policies by current employees." *NRA Grp., LLC v. Durenleau*, 154 F.4th 153, 167–69 (3d Cir. 2025). It applies a fortiori where no gate of any kind stood between the public and the repositories. And a computer hosting publicly available pages "has erected no gates to lift or lower in the first place," so "the concept of 'without authorization' does not apply to public websites." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1201 (9th Cir. 2022) (affirming preliminary injunction). The OnliSyn repositories were public when Defendant viewed them: their owner had set them to public, and anyone on the internet could view and download them without an account, password, or credential of any kind. Griffin Decl. ¶ 15. A system its owner has exposed to the public internet is a public system. It does not become "internal" (ECF No. 1 ¶¶ 32, 59) because of what it contains, because its owner did not intend the setting, or because the owner later closed it; the

question under *Van Buren* is whether a gate was down when the access occurred, and here there was none. Defendant told Plaintiffs' CTO within hours, and Plaintiffs secured the repositories the same day. Griffin Decl. ¶¶ 15–18. And the Verified Complaint concedes that "there is currently no evidence that Griffin was able to access Onli's internal computer systems or obtain its secrets through GitHub." ECF No. 1 ¶ 32.

The extortion theory under § 1030(a)(7) fails on the same record. That provision requires a threat to a protected computer or its information, made with intent to extort. The June 17 email contains no threat to any computer; it states a price for domain names and profiles, the same price stated on June 1, before the repositories were at issue. Griffin Decl. ¶ 23 & Ex. 6. And the $5,000 "loss" of "taking its GitHub repositories offline" (ECF No. 1 ¶¶ 33, 62) is the cost of correcting Plaintiffs' own exposure, incurred because Defendant told them about it. Griffin Decl. ¶¶ 16, 18. The CROA count rises or falls with the CFAA count; Plaintiffs say so themselves. ECF No. 2 at 21 (PageID 94). It also fails on its own terms. The New Jersey Act, like the CFAA, reaches only unauthorized conduct, and the Third Circuit reads it "in harmony with its federal counterpart." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016). And a claim under it "require[s] proof of some activity vis-a-vis the information other

than simply gaining access to it." *Id.* at 277 (quoting *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 509 (3d Cir. 2005)). The Verified Complaint concedes there is "no evidence" of anything beyond access. ECF No. 1 ¶ 32.

**B. The privacy counts (Counts VIII–IX; proposed ¶ (e)).**

Publicity given to private facts requires that the facts be "genuinely private." ECF No. 2 at 22 (PageID 95) (Plaintiffs' own statement of the elements). The Scottsdale address on the LinkedIn page is the principal office address that Mr. Anton, as incorporator, filed with the Wyoming Secretary of State for ONLI.AI, INC. in November 2025. Griffin Decl. ¶ 8 & Ex. 2. A fact a plaintiff has placed in a public government record is not one the law shields from repetition: "[i]f the facts are public information, even though they relate to matters of individual privacy, they cannot for these purposes be considered 'private.'" *Romaine v. Kallinger*, 109 N.J. 282, 298 (1988); accord *G.D. v. Kenny*, 205 N.J. 275, 311 (2011) (no "reasonable expectation of privacy in matters so long in the public domain"). The bank-account number came from an invoice the company issued to a third party and, in Ms. Anton's words to the police, was "outdated." Griffin Decl. ¶ 20 & Ex. 5 at 1. And the "drone surveillance" on which Count IX depends (ECF No. 1 ¶ 74) never happened: the image is a frame from a Google

Earth Studio render of public satellite imagery with a DJI logo overlaid, Griffin Decl. ¶ 21, and Ms. Anton told the police she "could not determine whether the footage was real or AI generated." *Id.* Ex. 5 at 1. The image was made to look like drone footage; but no drone flew, nothing was observed or recorded, and there was no intrusion.

**C. The June 29 email is not a threat, and the Complaint misdescribes it.**

Verified Complaint ¶ 39 alleges that Defendant conditioned the "dark web bounties" sentence on Plaintiffs' willingness "to make a deal with him"; the brief says "if Plaintiffs would not pay him." ECF No. 2 at 13 (PageID 86). The email says neither. It asks for nothing. ECF No. 1-1 at 51 (PageID 73). Read whole, the paragraph states Defendant's concern for his own safety: he had spent the preceding evening reporting to the Scottsdale police a phishing attack on his account and the scanning of his home network, had told Mr. Anton in writing on June 1 and 2 that he believed Mr. Anton had sent people to his home, and had told Plaintiffs and their lawyers on June 17 that he believed Mr. Anton was behind the attack. Griffin Decl. ¶¶ 25–26, 31 & Exs. 3, 5, 6. The sentence Plaintiffs quote as a boast—"I had a team of guys swatting a close friend of mine and their entire family"—describes the 2020 case in which Defendant investigated the swatting of a family and delivered his analysis to the Secret Service, whose agent wrote:

"This is extremely impressive work." *Id.* ¶ 31 & Ex. 8. The next sentence, "USSS actually has jurisdiction over swatting," is intelligible only on that reading. The "blast radius" paragraph, which the Complaint reads as a threat to "abuse the legal process" (ECF No. 1 ¶ 40), goes on to say expressly that it means interrogatories, document requests, and depositions. ECF No. 1-1 at 51 (PageID 73). The Scottsdale officer "did not find any direct threats made by either" side. Griffin Decl. Ex. 5 at 7.

**D. The Lanham Act counts (Counts I–III; proposed ¶¶ (a)–(d)).**

Defendant does not contest, for purposes of this motion, that Plaintiffs hold a registration for ONLI. But likelihood of success is measured against the relief sought, and the relief Plaintiffs seek beyond the Consent Order—a ban on using the individual Plaintiffs' names and biographical information in any online content —is not relief the Lanham Act provides. The Act protects against confusion as to source, sponsorship, or affiliation. ECF No. 2 at 14–16 (PageID 87–89). It does not entitle a corporation's officers to an order that no one may name them. On confusion itself, the only identified third party is Mr. Ferguson, whose account of how he reached the channel cannot be reconciled with the Cloudflare records or YouTube's termination date, and whose "confidential" video Onli itself published on Vimeo years ago. Griffin Decl. ¶¶ 33–35 & Exs. 9–11; *see* Counter-Statement §

E. The remaining evidence—connection requests to Onli's own employees (ECF No. 1 ¶ 44)—describes recipients best placed to know the profile was not their CEO's. And the channel content was, by Plaintiffs' own exhibit, a parody album and Onli's own promotional videos under commentary that the reviewing officer recorded as the poster's "opinions regarding the company and its products." Griffin Decl. Ex. 5 at 2; *see Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 53–57 (1988). As to the domain-name counts (Counts III–IV), the domains have been transferred or are held for Plaintiffs, and Defendant does not oppose the prospective bar in proposed ¶ (c) or its Consent Order counterpart (Point V, *infra*). Whether the registrations reflected a bad-faith intent to profit is a merits question the transfer has taken out of this motion; nothing about names Plaintiffs now own supports relief beyond ECF No. 11 ¶ 2(c).

The individual Plaintiffs' tort counts (Counts X–XII: false light, appropriation, and intentional infliction) do not change that analysis. Defendant does not minimize the conduct those counts describe: a LinkedIn profile and usernames in Mr. Anton's name, a paternity-themed video sent to a group message, and AI-generated images sent to Ms. Anton's relatives. Griffin Decl. ¶¶ 6–7, 9, 24. All of it ended before this action was filed, and all of it is already prohibited by ECF No. 11 ¶ 2(b) and (d), which bar any account or profile creating

a reasonable likelihood of confusion as to affiliation with a Plaintiff and any use of their photographs or non-public personal information. The gravamen of those torts is attribution—speaking *as* a person, or exposing what is private about him—not mention. They support the impersonation and privacy restraints Defendant has accepted; they do not support proposed ¶ (b)'s further bar on using a Plaintiff's "name . . . or biographical information" in any online content, which would reach commentary in Defendant's own name and this brief.

**E. The defamation and false-light counts (Counts VII, X) cannot support a prior restraint.**

Plaintiffs ask the Court to enjoin Defendant from "knowingly making, publishing, or disseminating any false statement of fact . . . concerning any Plaintiff." ECF No. 2-1 at 3 (PageID 107), ¶ (d). No court has adjudicated any statement false. An injunction against speech entered before any such adjudication is the classic prior restraint, and it "bear[s] a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *see Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *Kramer v. Thompson*, 947 F.2d 666, 675–77 (3d Cir. 1991) (vacating, under Pennsylvania law, an injunction against repeating statements a jury had found libelous). New Jersey's rule is the same: "a court of equity will not restrain a libel or slander even though it may tend to injure complainant in his business." *John R. Thompson Co.*

*v. Delicatessen & Cafeteria Workers Union, Local 410*, 126 N.J. Eq. 119, 121 (Ch. 1939). The exception Plaintiffs will cite confirms the rule. *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 949 (3d Cir. 1993), upheld an injunction against literally false advertising because it followed a trial, reached only "the very statements which the court found to be literally false," and so fell outside the prior-restraint doctrine, which "does not apply" after "an adequate determination that [the expression] is unprotected." And a court in this District, entering judgment by default, still declined to enjoin unspecified "further false statements" and limited relief to the statements adjudicated. *ThermoLife Int'l LLC v. Connors*, No. 2:13-cv-4399 (KM), 2014 WL 1050789, at *6–7 (D.N.J. Mar. 17, 2014). Here there has been no trial, no default, no finding of falsity, and the proposed order identifies no statement. As the Supreme Court put it: "No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants use of the injunctive power of a court." *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419–20 (1971). Defendant agreed in the Consent Order to a narrow, mutual bar on knowingly false statements of fact, ECF No. 11 ¶ 2(b), and has honored it. Plaintiffs are not likely to obtain, at final judgment, anything broader.

## POINT III — THE PROPOSED ORDER IS A PRIOR RESTRAINT AND DOES NOT MEET RULE 65(d)

Rule 65(d) requires that an injunction "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained." Fed. R. Civ. P. 65(d)(1). "Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). Those provisions "are not mere technicalities," and failure to satisfy them "will typically result in an injunction's vacatur." *Mallet & Co. v. Lacayo*, 16 F.4th 364, 388 (3d Cir. 2021). The Rule also forbids defining the restrained acts "by referring to the complaint or other document," Fed. R. Civ. P. 65(d)(1)(C), and requires that the description of enjoined conduct "be narrowly tailored," because "[i]njunction orders should not restrain" a party "from engaging in lawful . . . activities." *Mallet*, 16 F.4th at 388–90. Four of the proposed subparagraphs fail that test, as a comparison with the Consent Order shows.

**Subparagraph (b)** would enjoin Defendant "from otherwise using the name, likeness, photograph, or biographical information of Dhryl Anton, Michaela Kathrens Anton, or any other Onli officer or employee in any content, communication, or media posted or transmitted online." ECF No. 2-1 at 2 (PageID 106). Read as written, it forbids Defendant from posting this brief, describing this

lawsuit, or writing a sentence about The Onli Corporation that names its CEO. Plaintiffs' brief promises the order "would leave him free to engage in lawful speech about Onli in his own name." ECF No. 2 at 27 (PageID 100). The text does not. The Consent Order's version is confined to accounts that create "a reasonable likelihood of confusion" as to affiliation. ECF No. 11 ¶ 2(b). That is the Lanham Act's line, and it is the only line the Lanham Act supports.

**Subparagraph (d)** would enjoin "knowingly making, publishing, or disseminating any false statement of fact (including AI-generated content created at Defendant's direction) concerning any Plaintiff." ECF No. 2-1 at 3 (PageID 107). The Consent Order reaches "knowingly false statement[s] of fact (including AI-generated content that a reasonable person would interpret as conveying factual information)," and binds Plaintiffs to the same. ECF No. 11 ¶ 2(b). The proposed version deletes the reasonable-person standard—so that a parody song is enjoined if anyone could call it "false"—and the mutuality. It is a prior restraint on satire that would leave Defendant to guess, on pain of contempt, which sentences a future motion might call false. *See Keefe*, 402 U.S. at 419–20; *Hustler*, 485 U.S. at 53–57.

**Subparagraph (e)** would bar publication of Plaintiffs' "home address, personal contact information, financial-account information, photographs, or

other private personal information." ECF No. 2-1 at 3 (PageID 107). The Consent Order restrains only information "that has not already been made public with the consent of the owner of that information or by an independent third-party." ECF No. 11 ¶ 2(d). The proposed version has no such exception. Under it, repeating the address Mr. Anton filed with the Wyoming Secretary of State would be contempt. Griffin Decl. Ex. 2. "Other private personal information" is undefined. This is the vagueness Rule 65(d) forbids.

**Subparagraph (f)** would enjoin access "without authorization" to "any computer, computer system, computer network, or online account of the Onli Corporation, including its GitHub repositories and organization," and would order Defendant to "identify and return to Plaintiffs" any "credential, secret, or confidential information" in his possession. ECF No. 2-1 at 4 (PageID 108). The Consent Order confines the restraint to "a non-publicly accessible computer system." ECF No. 11 ¶ 2(e). That is the right line: a system, repository, or account its owner has made reachable by the public without a credential is publicly accessible, whatever it contains and whether or not the owner meant to expose it, and viewing it is not access "without authorization." *See* Point II.A, *supra*. Because Plaintiffs' theory is that opening a public repository is access "without authorization" (ECF No. 2 at 20–21 (PageID 93–94)), the proposed version would

make it contempt to open a public GitHub page, and it would impose a mandatory "return" obligation for secrets Plaintiffs concede there is no evidence Defendant obtained. ECF No. 1 ¶ 32.

Finally, every subparagraph of the proposed order runs one way, where the Consent Order binds Plaintiffs to the same restraints. ECF No. 11 ¶ 2(b), (d)–(g). Plaintiffs offer no reason why an order the Court found "sufficiently specific" and adequate to "preserve the status quo," ECF No. 11 at 2 (PageID 211) (finding V), should be replaced with a broader, one-sided one.

## POINT IV — THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGH AGAINST THE EXPANDED RELIEF

On Defendant's side of the balance is the loss of the right to speak about a lawsuit brought against him and about a company whose public claims he has criticized. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). The Third Circuit, which otherwise refuses to presume irreparable harm, treats First Amendment harm as the exception. *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 204 (3d Cir. 2024) ("we presume that First Amendment harms are irreparable"). Defendant intends to discuss this case and Plaintiffs' business in his own name, without any suggestion of affiliation, and proposed ¶ (b) would forbid it. Griffin

Decl. ¶ 37. On Plaintiffs' side is the marginal difference between the Consent Order they have lived under for two months and the broader order they now propose—a difference they have not shown they need. The public interest in trademark enforcement (ECF No. 2 at 27 (PageID 100)) is fully served by the Consent Order's trademark paragraph, which Defendant does not oppose continuing.

Equity also asks how the movant has come to court. The clean-hands maxim "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). One example suffices. The Verified Complaint presents Defendant's June 1 message as an "initial domain-sale demand[]" (ECF No. 1 ¶ 30) and omits what Mr. Anton wrote four hours later: "So $8000 . . . Done," and "I am paying you because your operation taught us an important lesson we clearly needed." Counter-Statement § C; Griffin Decl. ¶ 11 & Ex. 3. Defendant does not ask the Court to resolve that matter here, only to weigh it in deciding whether to exercise its equitable discretion in Plaintiffs' favor.

## POINT V — ANY RELIEF MUST BE LIMITED TO THE CONSENT ORDER'S MUTUAL TERMS, CONDITIONED ON SECURITY, AND PRECEDED BY A HEARING ON DISPUTED FACTS

Defendant's primary position is that the motion should be denied. Three points follow if the Court concludes otherwise.

**Scope.** Any preliminary injunction should adopt the mutual restraints of ECF No. 11 ¶ 2(a)–(g) with the carve-outs in ¶ 2(h), the prospective domain bar of proposed ¶ (c), and the two transfer directives Defendant volunteers below—and nothing more. Those terms were negotiated, were found by the Court to be specific and adequate, and have worked. Defendant consents to their continuation as a preliminary injunction on the same mutual terms, recognizing that restraints binding Plaintiffs require their consent. Entry of those terms would also resolve a tension in the Consent Order: Paragraph 8 continues the restraints "until the Court decides the converted motion," but Paragraph 4 terminates the Order 90 days after entry—October 25, 2026—"absent an order from this Court providing otherwise." ECF No. 11 ¶¶ 4, 8. Defendant also consents to directives that he transfer the @dhryl channel to Mr. Anton (or delete it, at Plaintiffs' election), complete the .link transfers upon Plaintiffs' designation of a receiving account, and extend ¶ 2(d) to the individual Plaintiffs' immediate family. He opposes the

one-sided expansions at ECF No. 2-1 ¶¶ (b), (d), (e), and (f) for the reasons in Point III.

**Security.** Rule 65(c) permits a preliminary injunction "only if the movant gives security in an amount that the court considers proper." Plaintiffs ask the Court to waive security on the finding that "Defendant faces no measurable risk of harm or monetary loss from compliance." ECF No. 2-1 at 5 (PageID 109) ¶ 8. That may be true of the Consent Order's terms, but not of an order forbidding Defendant to name Plaintiffs online. The bond "is also the only recourse for a wrongfully enjoined party," *Mallet*, 16 F.4th at 391, and in this Circuit "the instances in which a bond may not be required are so rare that the requirement is almost mandatory." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988). If the Court enters any restraint beyond the Consent Order, it should require security commensurate with the speech restrained.

**Disputed facts.** Defendant does not request oral argument; the motion can be denied on the papers. But a preliminary injunction may be decided on the papers only "if the facts are undisputed and the relevant factual issues are resolved." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175–76 (3d Cir. 1990). The facts on which Plaintiffs' expanded relief depends—whether the repositories were public, whether the address was a public filing, whether the

aerial image came from a drone, whether the June 29 email was conditioned on payment, and how Mr. Ferguson reached a channel that no longer existed—are disputed, and on each Defendant has offered documentary evidence contradicting Plaintiffs' verified allegations. Resolving any of them in Plaintiffs' favor would require an evidentiary hearing at which Mr. Ferguson, Mr. Anton, and Ms. Anton are examined. The Rule 65(d) defects in Point III, by contrast, require no hearing; they are an independent ground for declining the expanded order on the papers. *Mallet*, 16 F.4th at 388.

## CONCLUSION

The converted motion should be denied. Alternatively, any preliminary injunction should be limited to the mutual terms of Consent Order ¶ 2(a)–(h) (ECF No. 11), entered so that those terms do not lapse on October 25, 2026; conditioned on Rule 65(c) security to the extent it exceeds them; and, to the extent it rests on resolving disputed facts in Plaintiffs' favor, entered only after an evidentiary hearing. Proposed orders in both forms accompany this brief.

Dated: September 28, 2026

Respectfully submitted,

Thomas Griffin
Defendant, pro se
76 Oakwood Village, Apartment 6, Flanders, NJ 07836
(201) 259-8860 · tom@thegrif.net